UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTON NO. 3:06CV-614-H

DENNIS L. WALZ                                                                                              PLAINTIFF

V.

JOHN E. POTTER                                                                                           DEFENDANT

**MEMORANDUM OPINION**

Dennis L. Walz ("Plaintiff") sued John Potter, the Postmaster General, ("Defendant"), alleging discrimination based upon age, sex, and retaliation for prior Equal Employment activities. Defendant moves for dismissal for failure to state a claim, or in the alternative, for summary judgment, arguing that Plaintiff has neither exhausted his administrative remedies nor did he suffer any adverse action. Plaintiff has conceded his claim for age discrimination in his response brief. Therefore, the Court need only consider the gender and retaliation claims. For the reasons that follow, the Court finds that Plaintiff has not suffered any adverse actions as either the discrimination or retaliation statutes define them.

**I.**

Plaintiff, a 51 year-old white male, works for the United States Postal Service at the Lyndon, Kentucky station. Beginning in 2001, Plaintiff filed Equal Employment Opportunity ("EEO") actions on nine (9) separate occasions. On August 11, 2004, Plaintiff filed a formal discrimination complaint alleging sex, age, and retaliation discrimination. Plaintiff alleges three sources of discrimination: (1) Defendant, through its agent Kenny Higgins, destroyed Plaintiff's Family Medical Leave Act ("FMLA") paperwork in retaliation for his filing the EEO action; (2)

Defendant refused his request for leave to complete interrogatories in connection with the pending Equal Employment Opportunity Commission ("EEOC") claims; and (3) on or about July 14, 2004, Defendant refused to grant administrative leave to participate in a phone conference with an Administrative Judge in connection with the EEOC hearing.

The EEO dismissed Plaintiff's complaint, and all allegations, in its Final Agency Decision ("FAD") on January 18, 2007. Plaintiff appealed the FAD to the EEOC's Office of Federal Operations ("OFO"). The OFO initially affirmed the dismissal, but later reconsidered it. Eventually the OFO dismissed the paperwork destruction claim, but conducted a supplemental investigation on the others. After Plaintiff failed to provide necessary dates regarding his allegations, the investigation stalled.

In this suit, Plaintiff reasserted his earlier allegations of age and sex discrimination through his treatment as a postal worker. Plaintiff supports his allegations with an affidavit asserting disparate treatment amongst individual postal workers in the Lyndon station. Plaintiff alleges that his supervisor Kenny Higgins threw his FMLA papers in the trash, despite the fact that Higgins had no need to possess the papers. Plaintiff makes other allegations regarding his delivery routes. First, he asserts that his route was too large for the time allotted for delivery and, in spite of this, Mr. Higgins kept adding to Plaintiff's route while cutting the route of a woman, Bonnie Higgins. Further, Plaintiff alleges Ms. Higgins was allowed to have rural carriers take out her parcels, go home early, carry her scans, and show up late for work all without discipline. He also alleges that Ms. Higgins's route was adjusted from a walking route to a business and cluster route in 2004. Plaintiff alleges that he was forced off of Route 58 because he was unable to complete it in the time period, but that the route was shortened when a

woman bid on it. He further alleges that Ms. Higgins and other women were allowed to case their bundles when driving delivery while men were not. Finally, Plaintiff alleges that Supervisor Greg Roadhouse changed Plaintiff's cases and then inspected Plaintiff's work without giving him adequate time to learn the new case. Plaintiff maintains that he was denied administrative leave to complete interrogatories and to attend a telephone conference with the Administrative Judge. He asserts that other employees were granted such leave.

## II.

The Court will address this as a motion for summary judgment. Plaintiff has filed an affidavit with his response, which provides him sufficient opportunity to highlight an adverse action he experienced. Plaintiff has personal knowledge of his experience and the particular adverse actions that affected him. No discovery is necessary for Plaintiff to explain his injury.

A party is entitled to summary judgment if the evidence in the record "show[s] that there is no genuine issue of material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden to show "an absence of evidence to support the nonmoving party's case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmoving party may not rest on mere allegations, but "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Cov., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate in a Title VII case where the plaintiff is unable to establish a prima facie case. *Shah v. Gen. Elec. Co.*, 816 F.2d 264, 271 (6th Cir. 1987).

**III.**

Title VII of the Civil Rights Act of 1964 prohibits discrimination against any individual on the basis of race or sex, and prohibits discrimination by way of retaliation against any individual opposing an unlawful practice under Title VII. *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 56 (2006) [hereinafter *Burlington Northern*]. To make out a prima facie case for employment discrimination Plaintiff must show (1) that he belongs to the protected class, (2) that he was qualified for the job, (3) that he suffered an adverse employment decision, and (4) that similarly situated comparable employees not in the class were treated differently. *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973); *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Defendant may then show a legitimate, nondiscriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff then has the burden of showing that the proffered reason is actually a pretext for discrimination. *Id.* at 804.

**A**.

The threshold question, here, for any of Plaintiff's discrimination claims is whether Plaintiff suffered an adverse employment action. Both a substantive Title VII claim and an anti-retaliation Title VII claim require an injury by an adverse action. However, the Supreme Court distinguishes the scope of "adverse action" in an anti-discrimination context from the anti-retaliation context. *Burlington Northern*, 548 U.S. at 59-60; *Michael v. Caterpillar Fin. Srvs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007). The anti-retaliation definition "extends beyond workplace-related or employment-related retaliatory acts and harm." *Burlington Northern*, 548 U.S. at 67. Thus, Plaintiff faces a less onerous burden in the retaliation context since more actions will be considered materially adverse in that context than in the anti-discrimination

context. *Michael*, 495 F.3d at 595-96. Even though the standards are not coterminous, an action that is not materially adverse for a retaliation claim will similarly fail for a discrimination claim. *See Burlington Northern*, 548 U.S. at 67.

In the retaliation context, Plaintiff must show "that a reasonable employee would have found the challenged action materially adverse." *Id.* at 68. In other words, the act might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (quoting *Rochan v. Gonzales*, 438 F.3d 1211, 1219 (C.A.D.C. 2006)). The Sixth Circuit further illuminates the definition of "materially adverse":

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Ford v. Gen. Motors Corp.*, 305 F.3d 545, 553 (6th Cir. 2002) (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). It rejects "the rule that only 'ultimate employment decisions,' such as hirings, firings, promotions, and demotions, can be materially adverse." *Michael*, 496 F.3d at 594. Therefore, a materially adverse action may include being placed on administrative leave and put on a performance monitoring plan and the combined effect of being subjected to an increased workload, heightened scrutiny, and constructive discharge. *Id.* at 596 (holding that being placed on administrative leave and instituting a 90-day performance plan to monitor the plaintiff did qualify as retaliatory actions); *Ford*, 305 F.3d at 554 (holding that plaintiff was subjected to a materially adverse employment action when he experienced an increased workload, heightened scrutiny, and constructive discharge). However, temporary termination, or

loss of job responsibility, does not constitute a materially adverse employment action. *Keeton v. Flying J, Inc.*, 429 F.3d 259, 267 (6th Cir. 2005) (explaining "that the 'very temporary' nature of the action placed it within the de minimis exception").

To be actionable, the employment action must be more than *de minimis*. *Ford*, 305 F.3d at 553. Temporary actions and situations "where further remedial action is moot and no economic loss occurred" constitute *de minimis* actions. *Kauffman v. Allied Signal, Inc., Autolite Div.*, 970 F.2d 178, 187 (6th Cir. 1992). Further, "a mere inconvenience or alteration of job responsibilities is not enough to constitute an adverse employment action." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 182 (6th Cir. 2004) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (internal quotations omitted)). The Sixth Circuit has not directly addressed whether denying the plaintiff "official time" to investigate and participate in EEOC proceedings constitutes a materially adverse action; however, other courts suggest that denying the plaintiff official time, but not imposing any other negative impact on the plaintiff would not give rise to an adverse employment action.[1]

**B.**

Plaintiff states three allegations upon which he rests his claim: (1) his FMLA papers were destroyed, (2) he was denied "official time" to respond to interrogatories, and (3) he was denied

---

[1] *See e.g., Brasch v. Peters* 479 F. Supp. 2d 1045, 1076 (E.D. Mo. 2007) (holding that "denial of plaintiff's request to participate in a volunteer program on work time is not an adverse employment action"); *Signal v. Gonzales*, 430 F. Supp. 2d. 528, 543 n.8 (D.S.C. 2006) (noting that Plaintiff's claim regarding difficulty receiving official time off to respond to a proposed adverse disciplinary action did not in and of itself evidence a negative impact on Plaintiff); *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 329 (D. Md. 2003) (concluding that denial of official time to work on discrimination complaint was not an adverse employment action where Plaintiff suffered no negative consequences because she was not placed on absent without leave ("AWOL") status for taking the time off); *Bowman v. Henderson*, 2001 U.S. Dist. LEXIS 3807, *6 (W.D. Mich. 2001) (holding that denying a "request for four hours of 'official time' is a *de minimis* action [that] does not meet the definition of an adverse employment action"). *But see*, *Batson v. Powell*, 912 F.Supp. 565, 579 (D.D.C. 1996) (holding that "[d]enial of leave to attend a [EEO] counseling meeting can qualify as an adverse employment action.").

-6-

"official time" to participate in a phone conference with an administrative judge.

The first allegation is easily resolved. No evidence presented suggests that the alleged destruction of Plaintiff's FMLA papers caused him to lose any benefits. An action such as this is more in the nature of a harassment. The last two allegations are variations of the same allegedly harmful action, denial of "official time." Plaintiff incurred no negative treatment because, although he was denied administrative leave, he was granted annual leave that could be changed to administrative leave, or "official time," pending approval. Plaintiff was not denied the ability to complete the interrogatories for his EEOC hearing or to participate in the phone conference. The action Plaintiff presents is merely a question of coding the time, and only a temporary coding decision at that. These circumstances are of the same kind that other cited cases have found not to be adverse actions.

Plaintiff also presents additional factual information by way of an affidavit in his response to Defendant's motion. Plaintiff's complaints about the routes suggest only alterations of responsibilities, not losses of benefits or pecuniary loss. Further, Plaintiff's allegations regarding Ms. Higgins employment and other policy adaptations for women do not suggest that Plaintiff lost a benefit. Thus, none of these three allegations constitute materially adverse actions, but rather are merely *de minimis* claims.

Plaintiff's allegations fail to give rise to a materially adverse action taken against him and provide no evidence of a negative consequence resulting from the alleged acts. The Court finds nothing to suggest that such acts would dissuade a reasonable person from filing a discrimination claim. Since Plaintiff fails to present any evidence establishing an adverse action from his employer for purposes of a retaliation claim, Plaintiff cannot make a prima facie case of

retaliation. Because none of the acts constitute adverse actions for a retaliation claim Plaintiff is similarly unable to meet the stricter requirement for a discrimination claim.

      The Court will enter an order consistent with this Memorandum Opinion.

cc:    Counsel of Record